WILLIAM KISER, APPELLEE, v. CHICAGO, BURLINGTON &
QUINCY RAILROAD COMPANY, APPELLANT.

FILED NOVEMBER 27, 1912.  No. 16,864.

Carriers: DELAY IN SHIPMENT. Verdict against a carrier for damages
resulting from delay in transporting live stock to market *held*
sustained by the evidence.

APPEAL from the district court for Harlan county:
HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Byron Clark, W. S. Morlan* and *Arthur R. Wells,* for
appellant.

*John Everson, contra.*

ROSE, J.

The suit was brought to recover damages in the sum of
$175.83 for defendant's delay in transporting a car of
hogs loaded at Woodruff, Kansas, February 13, 1909, and
delivered at St. Joseph, Missouri, too late for the market
February 16, 1909. Plaintiff pleaded that the consign-
ment, in the ordinary course of transportation, would
have reached its destination in the morning of February
15, 1909; that defendant permitted the loaded car to
stand on its track at Woodruff two days during stormy,
cold weather, and that in consequence the hogs crowded
together, 15 of them died, and the others depreciated in
value. The answer contained a general denial; and an
affirmative plea that plaintiff undertook to load the hogs
and to care for them until they were taken away from
Woodruff; that he put them into the car during a snow-
storm, which increased in severity until it blockaded de-
fendant's railroad; that by reason of the blockade defend-
ant was unable to transport the car any earlier than it
did; and that the delay and the resulting injuries were
caused by the storm, and by want of ordinary care on
part of plaintiff in loading the car when it was storming,

and in failing to give the hogs proper care while they were at Woodruff. Plaintiff recovered a verdict and judgment for $163.86. Defendant appealed.

The only question presented is the sufficiency of the evidence to sustain the verdict. There is no proof in the record except that adduced by plaintiff. It shows: Two stock trains a week, going eastward, ran out of Woodruff, one Wednesday at 4 o'clock in the morning, and the other at the same hour Sunday. At night there was no agent at the station. It was customary for the station agent to deliver the bill of lading Saturday evening for Sunday's shipment, for the shipper to load the car before 4 o'clock the next morning, and for the carrier to take it away shortly afterward. Defendant maintained stock-yards at Woodruff. About 5 o'clock Saturday afternoon, February 13, 1909, plaintiff put 80 hogs in the stock-yards, told the agent what he had done, where the hogs were to be shipped, and procured from him the same evening a bill of lading. Between 3 and 4 o'clock the next morning, plaintiff loaded the hogs into a stock car on defendant's track, and went home. The car was not moved until Monday evening, did not reach St. Joseph until Wednesday, and the consignment was injured in the manner pleaded in the petition.

Defendant argues these propositions to show the insufficiency of the evidence: There was no delay except at Woodruff. The consignment was picked up by the first train going east. Plaintiff undertook to care for the hogs during the delay. He failed to prove that they were delivered to defendant for shipment before the car was taken away.

Defendant's view of the evidence relating to the delivery is not the only reasonable one. Plaintiff testified in substance: There was no agreement on his part to care for the hogs or to furnish a caretaker at the station or en route. He learned about 10 o'clock Sunday morning that the car had not been taken away. He promptly went to the station, found some of the hogs dead, reported the con-

ditions to the agent, under his direction nailed grain doors on the car to protect the rest of the hogs from the storm, and afterward bedded and fed them. The proof of these facts, when considered with the entire record, is sufficient to sustain findings that the hogs would have had less protection from the storm in defendant's stock-yards than they had in the car; that what plaintiff did to protect and care for them was done by direction of the station agent; and that plaintiff surrendered full control over the hogs for the purpose of shipment when he loaded them.

It is also argued that the evidence is insufficient for the following reasons: The hogs had proper care at Woodruff. There was no delay elsewhere. Defendant was prevented by an unprecedented snowstorm from starting the shipment sooner.

The last conclusion thus stated by defendant is not a necessary deduction from the proofs. The testimony relating to the storm is meager. Plaintiff said it was storming some when he got the bill of lading, and that it was snowing quite a little and blowing when he loaded the car. He also said he was told about noon Sunday that one of defendant's engines was stuck in a drift west of Woodruff. Neither the place nor the distance west was shown. This comes far short of proving an unprecedented storm which excused the delay in shipping the hogs, though plaintiff never before had a similar experience. There is no evidence that defendant's road was blockaded between Woodruff and St. Joseph, or that the car could not have been taken out promptly by an engine or train from the east.

A sufficient reason for setting aside the verdict has not been given, and the judgment is

AFFIRMED.